# 𝕿𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕱𝖊𝖉𝖊𝖗𝖆𝖑 𝕮𝖑𝖆𝖎𝖒𝖘

No. 06-911L
(Filed:  October 7, 2011)

```
* * * * * * * * * * * * * * * * * * *
                                    *
OMAHA TRIBE OF NEBRASKA,            *
                                    *
                                    *   28 U.S.C. § 1500; United States v. Tohono
            Plaintiff,              *   O'Odham Nation, 131 S.Ct. 1723 (2011);
                                    *   Substantial Overlap in Operative Facts;
v.                                  *   RCFC 12(h)(3).
                                    *
The United States,                  *
                                    *
            Defendant.              *
                                    *
* * * * * * * * * * * * * * * * * * *
```

*Brian J. Leinback*, Los Angeles, CA, for plaintiff.

*Joshua A. Doan*, U.S. Department of Justice, Washington, DC, with whom was *Ignacia S. Moreno,* Assistant Attorney General, for defendant.


## ORDER DISMISSING CASE
## FOR LACK OF SUBJECT MATTER JURISDICTION


**FIRESTONE**, *Judge*

The plaintiff, Omaha Tribe of Nebraska ("Omaha Tribe"), filed this suit in the

Court of Federal Claims ("CFC") against the defendant ("the government") on December

28, 2006.  See CFC Compl.  More than eighteen months earlier, the plaintiff filed a

companion case against the government for declaratory and injunctive relief in the United

States District Court for the District of Columbia, Omaha Tribe of Nebraska v.

Kempthorne, No. 1:04-cv-00901-JR (D.D.C.), on June 2, 2004, which it amended on September 1, 2006, more than three months prior to filing this action.  See District Compl.; Am. District Compl.  The plaintiff's allegations in both cases relate to the trust accounting and trust management duties and responsibilities allegedly owed by the government to the plaintiff.  See CFC Compl; Am. District Compl; see also Joint Mot. To Stay (Feb. 20, 2007), ECF No. 6.  Pending before the court in this case is briefing on the question whether the plaintiff's suit in the district court was "for or in respect to the same claim" over which the plaintiff seeks relief in this court.  For the reasons that follow, because the plaintiff's district court claim was "for or in respect to the same claim" as this CFC suit and pending at the time this CFC suit was filed by the plaintiff, the court determines that under the limit placed on the jurisdiction of the CFC by 28 U.S.C. § 1500 ("section 1500")[1] it must dismiss the plaintiff's suit for lack of jurisdiction pursuant to Rule 12(h)(3) of the Rules of the Unites States Court of Federal Claims ("RCFC") ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

---

[1] That statute provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500.

# I.      PROCEDURAL HISTORY

The plaintiff filed a case against the government for declaratory and injunctive relief in federal district court on June 2, 2004, <u>see</u> District Compl., and filed an amended complaint in that action on September 1, 2006, <u>see</u> Am. District Compl.[2]  Three months after filing its amended complaint, the plaintiff filed this suit against the government seeking money damages on December 28, 2006.  <u>See</u> CFC Compl.  On February 22, 2007, following a joint motion of the parties, the court stayed this case so the parties could pursue settlement discussions, renewing the stay on eight occasions at the repeated joint request of the parties.  <u>See</u> Orders Granting Joint Mots. To Stay, ECF Nos. 7, 9, 18, 21, 26, 28, 30, 33, 35.  While this case was stayed, the Supreme Court entered its decision in <u>United States v. Tohono O'Odham Nation</u>, 131 S.Ct. 1723 (2011), providing new guidance on the application of section 1500.  The Supreme Court held:

> The CFC has no jurisdiction over a claim if the plaintiff has another suit for or in respect to that claim pending against the United States or its agents.
> . . . .
> . . . Two suits are for or in respect to the same claim, precluding jurisdiction in the CFC, if they are based on substantially the same operative facts, regardless of the relief sought in each suit.

---

[2] When determining whether a claim is "pending" for purposes of section 1500, this court follows the longstanding principle that "the jurisdiction of the Court depends upon the state of things at the time of the action brought."  <u>Keene Corp. v. United States</u>, 508 U.S. 200, 207 (1993) (citations omitted).  Because the amended district court complaint was the plaintiff's pending district court complaint at the time that the plaintiff filed suit in this court, this court compares the amended district court complaint to the complaint in this action to determine whether the two cases are based on substantially the same operative facts for purposes of section 1500.

Tohono, 131 S.Ct. at 1727, 1731.  In light of this decision, on June 1, 2011, the court

issued an Order to Show Cause, requesting briefing on the question of whether, based on

the Supreme Court's decision in Tohono, the court's jurisdiction over this case was

barred at the time of filing by the earlier-filed and still pending case in district court and

the operation of section 1500.  See Order to Show Cause, ECF No. 38.  In its brief, the

plaintiff argues that its two complaints do not contain the same factual allegations and are

based on different operative facts, and therefore asserts that section 1500 does not bar its

CFC claim.  See Pl.'s Suppl. Br., ECF No. 39.  In its response the government argues that

the court should dismiss the plaintiff's complaint for lack of subject matter jurisdiction

based on the application of section 1500, arguing that this court never possessed

jurisdiction over the plaintiff's suit because the plaintiff's district court complaint and

CFC complaint allege claims that are based on substantially the same operative facts.

See Def.'s Resp., ECF No. 40.  Oral argument was heard on October 4, 2011.

## II.   DISCUSSION

### A.      Standard of Review

All those seeking to invoke this court's subject-matter jurisdiction ultimately

retain the burden of establishing that the jurisdictional requirements are met.  Keener v.

United States, 551 F.3d 1358, 1361 (Fed. Cir. 2009) (citing Rocovich v. United States,

933 F.2d 991, 993 (Fed. Cir. 1991)); Alder Terrace, Inc. v. United States, 161 F.3d 1372,

1377 (Fed. Cir. 1998) (citing McNutt v. Gen. Motors, 298 U.S. 178, 189 (1936)).

Subject-matter jurisdiction may be challenged at any time by the parties or by the court

sua sponte.  Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004); see also

RCFC 12(h)(3).  In deciding whether there is subject-matter jurisdiction, "the allegations

stated in the complaint are taken as true and jurisdiction is decided on the face of the

pleadings."  Folden, 379 F.3d at 1354 (citation omitted).  If the court determines that it

does not have jurisdiction, it must dismiss the claim.  RCFC 12(h)(3); Arbaugh v. Y&H

Corp., 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-

matter jurisdiction, the court must dismiss the complaint in its entirety.") (citation

omitted); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998).  See generally

John R. Sand & Gravel, Co. v. United States, 552 U.S. 130 (2008), aff'g 457 F.3d 1345

(Fed. Cir. 2006).

> **B.      Based upon Recent Supreme Court Precedent, Jurisdiction Over the CFC Complaint Is Precluded Because of the Substantial Overlap in Operative Facts.**
>
> > **1.      The jurisdiction of the CFC under the Tucker Act and the Indian Tucker Act is limited by 28 U.S.C. § 1500.**

This court has jurisdiction under the Indian Tucker Act, 28 U.S.C. § 1505, which

allows Native American tribes the right to bring suit in the Court of Federal Claims like

any other plaintiff.  United States v. White Mountain Apache Tribe, 537 U.S. 465, 472

(2003) ("[T]he Indian Tucker Act[] confers a like waiver for Indian tribal claims that

'otherwise would be cognizable in the Court of Federal Claims if the claimant were not

an Indian tribe'") (quoting 28 U.S.C. § 1505).  The Tucker Act establishes this court's

jurisdiction over "any claim against the United States founded either upon the

Constitution, or any Act of Congress or any regulation of an executive department, or

upon any express or implied contract with the United States, or for liquidated or

unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Like the

general Tucker Act, the Indian Tucker Act does not confer any substantive rights upon a

plaintiff; a plaintiff must establish an independent substantive right to money damages

from the United States in order for the case to proceed. See generally United States v.

Mitchell, 463 U.S. 206 (1983). In Indian trust accounting cases, the substantive right

must be found in statutes from which a trust relationship can be inferred, and one which

can reasonably be construed to imply a money remedy for breach. Id. at 217-218.

However, any claim brought in this court is subject to the limitations of section 1500.

Section 1500 provides:

> The United States Court of Federal Claims shall not have jurisdiction of
> any claim for or in respect to which the plaintiff or his assignee has pending
> in any other court any suit or process against the United States or any
> person who, at the time when the cause of action alleged in such suit or
> process arose, was, in respect thereto, acting or professing to act, directly or
> indirectly under the authority of the United States.

28 U.S.C. § 1500.

### 2. The Tohono decision clarified the test for identity of claims under 28 U.S.C. § 1500.

As noted above, the court's issuance of the order to show cause and the

government's argument for dismissal of the plaintiff's complaint is based primarily on

Tohono, the recent Supreme Court case interpreting section 1500. The plaintiff in

Tohono filed a district court action against federal officials alleging a breach of fiduciary

duty with respect to the management of tribal assets held in trust by the government.

United States v. Tohono O'Odham Nation, 131 S.Ct. 1723, 1727 (2011).  In its district

court case, the plaintiff sought equitable relief, including an accounting of trust property.

Id.  The day after filing its complaint in district court, the plaintiff filed a complaint in the

Court of Federal Claims, alleging nearly identical breaches of fiduciary duties based upon

the same tribal assets and sources of fiduciary duty, but seeking money damages.  Id.

The Court of Federal Claims dismissed the case based on section 1500, holding that

"Section 1500 divests this court of jurisdiction over plaintiff's claim because it arises

from the same operative facts and seeks the same relief as the claim in district court."

Tohono O'Odham Nation v. United States, 79 Fed. Cl. 645, 659 (2007).  The Federal

Circuit reversed based on Circuit precedent, holding that section 1500 is only applicable

if two claims both "arise from the same operative facts" and "seek the same relief."

Tohono O'Odham Nation v. United States, 559 F.3d 1284, 1288 (Fed. Cir. 2009)

(quoting Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1551 (Fed. Cir. 1994)

(en banc) ("For the Court of Federal Claims to be precluded from hearing a claim under

§1500, the claim pending in another court must arise from the same operative facts, and

must seek the same relief" (emphases in original))).  The Circuit found that the relief

sought in the Court of Federal Claims action was different from that sought in the district

court, and thus section 1500 did not divest the Court of Federal Claims of jurisdiction

over the subject complaint.

The Supreme Court reversed the Federal Circuit, holding that the relief sought in two complaints is superfluous to the question of whether two suits are "for or in respect to" the same claim within the meaning of section 1500. The Supreme Court in <u>Tohono</u> explained that, regarding section 1500, "[t]he rule is more straightforward than its complex wording suggests. The CFC has no jurisdiction over a claim if the plaintiff has another suit for or in respect to that claim pending against the United States or its agents." <u>Tohono</u>, 131 S.Ct. at 1727. The Court went on to state that "[t]wo suits are for or in respect to the same claim, precluding jurisdiction in the CFC, <u>if they are based on substantially the same operative facts, regardless of the relief sought in each suit</u>." <u>Id.</u> at 1731 (emphasis added). The Court held that the statute's use of the phrase "in respect to" "does not resolve all doubt as to the scope of the jurisdictional bar, but 'it does make it clear that Congress did not intend the statute to be rendered useless by a narrow concept of identity.'" <u>Id.</u> at 1728 (quoting <u>Keene</u>, 508 U.S. at 213). "It suggests a broad prohibition, regardless of whether 'claim' carries a special or limited meaning."[3] <u>Id.</u> The

---

[3] The Court noted that any hardship its ruling would cause the Tohono O'Odham Nation was "far from clear" because although the plaintiff's CFC case would have to be dismissed, an Indian tribe in the plaintiff's position could always bring a suit in the Court of Federal Claims after resolution of the district court case because the statute of limitations on Indian trust mismanagement claims would only begin to run once the government provided an appropriate accounting. <u>Tohono</u>, 131 S.Ct. at 1731. Regardless, the Court held:

> Even were some hardship to be shown, considerations of policy divorced from the statute's text and purpose could not override its meaning. Although Congress has permitted claims against the United States for monetary relief in the CFC, that relief is available by grace and not by right. . . . If indeed the statute leads to incomplete relief, and if plaintiffs like the Nation are dissatisfied, they are free to direct their complaints to Congress.

Court concluded, as the Court of Federal Claims had, that the plaintiff's two suits had "substantial overlap in operative facts" based upon the identity of the trust assets at issue and the alleged breaches of fiduciary duty, and noted, "Indeed, it appears that the Nation could have filed two identical complaints, save the caption and prayer for relief, without changing either suit in any significant respect." Id. at 1731.  Thus, the Court held, the Court of Federal Claims possessed no jurisdiction over the claim until the district court case was either dismissed or "complet[e]" and that after that time, the plaintiff would be "free to file suit again in the CFC if the statute of limitations is no bar." Id.

### 3.    The district court complaint and the CFC complaint share the same operative facts.

In this case, the plaintiff contends that, unlike the plaintiff in Tohono, it has not filed virtually identical complaints and argues that the two complaints do not contain the same factual allegations and are based on different operative facts.  The plaintiff argues that the operative facts of each case are confined to the trust duties at issue in each case and that the proof necessary to prevail in the two cases are entirely different.  For the district court action the plaintiff contends the operative facts "concern the government's conduct in providing an accounting, as well as the nature, scope, accuracy and completeness of the accounting," whereas for the CFC action the operative facts "identify the source and nature of defendant's fiduciary obligations to manage tribal monetary and non-monetary trust assets" and "do not involve the evaluation of any accounting."  Pl.'s Suppl. Br. 5-6.  The plaintiff also contends that the court should construe any overlapping

Id. (internal citations omitted).

facts as merely background facts that are not material to the proof of the plaintiff's claims and therefore are not operative. See id. at 4-6.  Moreover, the plaintiff contends the evidence that would be presented during the trial of the two cases will look very different, with the trial in district court "dominated by accounting issues" and the trial in the CFC "dominated by evidence relating to the handling of specific trust transactions and assets." Id. at 6.

In response, the government contends both the amended district court complaint and the CFC complaint allege claims that are based on substantially the same operative facts, and thus this court should dismiss this case for lack of subject-matter jurisdiction. Specifically, the government argues, "the two complaints use essentially identical factual allegations to assert that the United States, as trustee, breached fiduciary duties owed to Plaintiff by allegedly failing to account properly for and to manage properly Plaintiff's trust funds and assets."  Def.'s Resp. 5-6 (comparing District Compl. ¶¶ 16, 18-20, 26 with CFC Compl. ¶¶ 20, 22, 23, 35).  Further, the government argues that the plaintiff's contentions regarding the distinction between background and operative facts in this case as well as the plaintiff's anticipated production of different evidence at the two potential trials are meritless, where, as here, the plaintiff "recognizes that the accounting that it seeks in the district court involves the same operative facts at issue in its CFC Complaint and that the trust property at issue is the same for both cases."  Def.'s Resp. 12 (citing CFC Compl. ¶ 23 ("To date, the Defendant has failed to provide that accounting or other sufficient information which would otherwise afford the Plaintiff the ability to determine

whether, and to what extent, it has suffered a loss as a result of the Defendant's continual wrongdoing or other breaches of trust.")).

The court finds that the government has the prevailing argument.  As explained below, an examination of the amended district court complaint and CFC complaint reveals that at the time the CFC action was filed, the claims in each case arose from substantially the same operative facts.  Indeed, contrary to the plaintiff's contentions, the side-by-side table set forth below demonstrates that the two complaints are virtually the same as the complaints at issue in Tohono.[4]

| Excerpts from CFC Complaint | Excerpts from Amended District Court Complaint |
|---|---|
| Parties | Parties |
| "Plaintiff, OMAHA TRIBE OF NEBRASKA . . . is a federally recognized Indian tribe, whose government was reorganized under the Indian Reorganization Act of 1934 (IRA), 25 U.S.C. § 461 et seq.  It is recognized by the United States as a sovereign Indian tribe, under the protection of the United States, with legal rights and responsibilities. . . . which is eligible for the special programs and services provided by the United States to Indians because of their status as Indians, pursuant to Plaintiff's treaties and agreements with the United States, various Acts of Congress, and federal common | "Plaintiff is a federally recognized Indian tribe, recognized by the United States a sovereign Indian tribe with legal rights and responsibilities . . . . which is eligible for the special programs and services provided by the United States to Indians because of their status as Indians, and because of the Plaintiff's treaties and other agreements with the United States."  Am. District Compl. ¶ 2.

Defendants are office holders charged by law with carrying out the duties and responsibilities of the United |

---

[4] The Supreme Court explained the substantial overlap in operative facts in Tohono as follows:

> The two actions both allege that the United States holds the same assets in trust for the Nation's benefit. They describe almost identical breaches of fiduciary duty—that the United States engaged in self-dealing and imprudent investment, and failed to provide an accurate accounting of the assets held in trust, for example. Indeed, it appears that the Nation could have filed two identical complaints, save the caption and prayer for relief, without changing either suit in any significant respect.

Tohono, 131 S.Ct. at 1731 ("The CFC dismissed the action here in part because it concluded that the facts in the Nation's two suits were, 'for all practical purposes, identical.' [Tohono,] 79 Fed. Cl. [at] 656[].  It was correct to do so."); see also Tohono, 79 Fed. Cl. at 648-51 (comparing complaints in side-by-side tables).

law."  CFC Compl. ¶ 2.

Defendant is the United States of America.  See id.  ¶ 3.

States as trustee for the Plaintiff, administering the Plaintiff's trust funds, and preparing and maintaining records in connection with those funds.  See Id. ¶¶ 3-5.

Funds/Assets

"Plaintiff resides on the Omaha Indian Reservation.  The Plaintiff remains the successor in interest to the signatories of certain Indian treaties with the United States.  Plaintiff is the beneficial owner of certain monies . . . . certain land and other trust assets, title to which is held in trust by the United States for the benefit of the Plaintiff.  Many of these lands are valuable for grazing, agricultural and recreational uses.  The Plaintiff's trust assets also include the natural resources located on that land, including . . . water, timber, gravel, and a variety of mineral reserves.  It also includes off-reservation trust lands, trust assets and usufructuary rights."  Id. ¶ 11.

Funds/Assets

"Plaintiff resides within an Indian Reservation established by the United States.  The Plaintiff is a party to, and/or the successor in interest to, the signatories of certain Indian treaties with the United States and it is the beneficial owner of certain monies  . . .  held in trust for the Plaintiff by the United States, as well as of certain land and other trust assets, title to which is held in trust by the United States for the benefit of the Tribe.  The Plaintiff is also the owner of the natural resources located on their land held in trust . . . including . . . water, timber, and a variety of mineral reserves.  The Plaintiff's trust holdings also include land which is valuable for grazing, agricultural, and recreational use, and for other purposes."  Id. ¶ 8.

"Defendant has approved leases, easements, rights-of-way and other uses and conveyances of the property and the resources located therein . . . [as well as] various third party uses and taking of said land and resources.  In so doing the Defendant assumed responsibility for the collection, deposit and investment of the income generated or which should have been generated by such conveyances and use rights."  Id. ¶ 15.

"The Treaties of 1815 and 1825 and many . . . subsequent Omaha Treaties provided for the payment of monies . . . . [and] the creation of Trust fund accounts in the United States Treasury and in some instances established parameters for the management and use of those monies."  Id. ¶ 8.

Defendant has "approved, among others: (A) agreements for the use and extraction of natural resources which are or were located on the Plaintiff's trust property, (B) leases of the Plaintiff's trust lands, (C) easements across Plaintiff's trust land, (D) grazing permits on the Plaintiff's trust land, and (E) other grants, to third parties, of the authority to use certain of the Plaintiff's trust lands and natural resources for specific purposes. . . . [and] in certain limited instances, conveyed title . . . to third parties and . . . approved the use of certain of the Plaintiff's trust lands for Federal purposes. By granting these rights, the Defendant . . . assumed the legal responsibility for the collection of fair and equitable compensation for those conveyances or uses including, but not limited to:  royalty payments, grazing fees, rents, purchase prices, and such other fees and payments as are or were appropriate."  Id. ¶ 12.

Trust Obligations

"Under the terms of its treaties, and under other applicable law, tribal land held in trust and the trust resources located on the Plaintiff's lands are inalienable except as authorized by Congress, or by the terms and conditions of the Plaintiff's treaties with the United States and the Plaintiff's federally approved organic documents.  See, the Constitution and By-Laws of the Omaha Tribe.  Congress has granted the Secretary of the Interior the authority to approve certain limited conveyances of certain interests in the Plaintiff's trust lands and trust resources, including but not limited to:

Trust Obligations

"Under the terms of its treaties, and under other applicable law, tribal land held in trust and the tribal resources located on those trust lands are inalienable except as authorized by Congress, or by the terms and conditions of the Plaintiff's treaties with the United States. 25 U.S.C. [§] 177. Congress has granted the Secretary of the Interior the authority to approve conveyances of certain interests in the Plaintiff's trust lands and trust resources, including but not limited to: leases, easements, rights of way, resource harvesting and resource use agreements. . . . Federal law also generally

leases, easements, rights of way, resource harvesting and resource use agreements. . . . Federal law also generally requires that compensation be paid to the Plaintiff for the conveyance and/or use of its trust lands and trust resources." Id. ¶ 12.

"Because the United States holds the Plaintiff's lands, resources and the proceeds generated by and from the use, sale, or taking of said resources in trust, it has assumed the obligations of a trustee. . . . As trustee, the United States has a fiduciary duty to the Plaintiff to administer the trust with the greatest skill and care possessed by a trustee. . . . This includes a duty to insure that the tribal trust property, funds and assets are protected, preserved and managed in full compliance with the Defendant's trust duties and applicable law." Id. ¶ 16.

"Defendant in fact has undertaken and continues to undertake the responsibilities to account for, manage, and otherwise act as a fiduciary trustee on behalf of the Plaintiff." Id. ¶ 21.

"In Article 1 of the Treaty of March 16, 1854 . . . the Congress established the Omaha Indian Reservation . . . . While subsequent treaties and agreements diminished or altered the boundaries of Plaintiff's original Reservation and land holdings, the United States maintained a fiduciary obligation to protect those lands and the Plaintiff's interest therein . . . ." Id. ¶¶ 9-10.

"Congress authorized the Secretary of the Interior to collect income from tribal trust property and to deposit such trust income . . . for the benefit of the Plaintiff. . . . [and] directed that interest be paid on tribal trust funds, and required that such trust funds be invested. . . . [T]he United States assumed a statutory duty . . . to properly administer and manage the Plaintiff's trust assets, monies and property for the highest and best use of the Plaintiff." Id. ¶ 13.

"Congress . . . has consistently required the United States to increase the productivity of funds that it holds in trust for Indian Tribes." Id. ¶ 14.

"Court of Federal Claims has . . . consistently held the United States responsible for investing Indian trust funds in the highest yielding investment vehicles available to the funds in question." Id. ¶ 17.

"The trust obligation of the United States includes . . . the duty to insure that tribal trust property and trust funds are protected, preserved and managed so as to insure the highest and best use of those assets and funds,

requires that compensation be paid to the Plaintiff for the conveyance and the use of tribal lands and tribal trust resources." Id. ¶ 9.

"Because the United States holds the Plaintiff's trust lands, trust resources and the proceeds generated by or from the use, sale, or taking of said resources in trust, it has assumed the obligations of a trustee. . . . As trustee, the United States has a fiduciary relationship with the Plaintiff and an obligation to administer the trust with the greatest skill and care possessed by the trustee." Id. ¶14.

"The trust obligation of the United States includes, among other duties, the duty to ensure that tribal trust property and trust funds are protected, preserved and managed so as to produce the highest and best use and return to the tribal owner consistent with the trust character of the property. Said duty requires the United States to further insure that the Plaintiff is afforded its full rights to compensation." Id. ¶ 15.

"Defendants have assumed the responsibility for the investment of the corpus of the trust, including trust assets, the income that was and is being generated by the Plaintiff's trust lands, and trust resources and by the other trust monies paid to the Plaintiff." Id. ¶ 13.

"Congress has charged the Defendants with fulfilling the obligations of the United States as trustee and with the responsibility for the administration and management of all trust property of the Plaintiff in compliance with the Constitution . . . ." Id. ¶ 17.

"[T]he United States took possession of certain of the Plaintiff's lands and other valuable resources. When the United States took possession of those items it obligated itself to provide specific consideration to the Plaintiff. . . . [C]onsideration often took the form of money and/or goods and services which were to be provided by the United States to the Plaintiff . . . [and] managed by the United States until that consideration was delivered." Id. ¶ 11.

. . . the highest revenue to the tribal owner consistent with the trust character of the property . . . . [and] to further insure that the Plaintiff is afforded its full rights to compensation for any taking of trust assets." Id. ¶ 18.

"The Defendant . . . also has responsibility to:
   A.  Provide adequate systems for accounting for and reporting trust fund balances;
   B.  Provide adequate controls over receipts and disbursements;
   C.  Provide periodic and timely reconciliations to insure the accuracy of accounts;
   D.  Determine accurate cash balances;
   E.  Prepare and supply account holders with periodic statements of their account performance and with balances of their account to be available on a daily basis;
   F.  Establish consistent written policies and procedures for trust fund management and accounting;
   G.  Provide adequate staffing, supervision and training for trust funds management and accounting; and
   H.  Appropriately manage the natural resources located within the boundaries of Indian reservations and trust lands." Id. ¶ 19.

"Trust obligations of the United States include . . . the duty to:
   (a)  exercise opportunities to obtain monetary benefits from Plaintiff's trust land and resources,
   (b)  enter into reasonable contracts to advance those opportunities
   (c)  timely collect the trust funds rightly owed to the Plaintiff,
   (d)  timely create trust accounts to hold those funds,
   (e)  insure that the monies owed or paid for the loss or use of trust lands and resources are placed in those accounts in a timely manner,
   (f)  maintain adequate records with respect to the Plaintiff's trust property,
   (g)  maintain adequate systems and controls to guard against errors or dishonesty,
   (h)  provide regular and accurate accountings to the Plaintiff as the trust beneficiary,
   (i)  refrain from self-dealing or benefiting from the management of the trust property,
   (j)  insure the Federal Government's compliance with the protections afforded the Plaintiff under the Constitution . . . and other applicable law, and
   (k)  consult with the Plaintiff regarding the management of its trust property and the

"The trust obligations of the United States also include . . . the duty to:
   (A)  collect trust funds rightfully owed to the Plaintiff;
   (B)  create trust accounts to hold those funds[;]
   (C)  insure that the monies owed or paid for the loss or use of tribal lands and trust resources are placed into those accounts,
   (D)  maintain adequate records with respect to the Plaintiff's trust property,
   (E)  maintain adequate systems and controls to guard against errors or dishonesty,
   (F)  provide regular and accurate accountings to the Plaintiff as the trust beneficiary;
   (G)  refrain from self-dealing or benefiting from the management of the trust property;
   (H)  insure the Federal Government's compliance with the protections afforded the Plaintiff under the Constitution of the United States and other applicable law and
   (I)  to consult with the Plaintiff regarding the management of its trust property." Id. ¶ 16.

"By the Act of December 22, 1987 . . . Congress imposed two requirements on the Defendants: (1) that they audit and reconcile tribal trust funds, and (2) that they provide the tribes with an accounting of such funds." Id. ¶ 22.

implementation of the Government's treaty obligations." Id. ¶ 20.

Breaches of Trust

"The Defendant fraudulently concealed operative facts concerning the existence of the causes of action, claims and other instances of its mismanagement of trust property, assets and monies, so as to prevent the Plaintiff from fully prosecuting or pursuing its rights to a full and complete accounting, damages and other claims arising out of the Defendant's failures as alleged herein.  In furtherance of their fraudulent concealment and deception, the Defendant . . . create[d] the false appearance of a complete and meaningful accounting or reconciliation of funds or monies otherwise due Plaintiff, and continuously . . . have continued to conceal the facts which would support Plaintiff's claims, so as to delay the accrual of any cause of action otherwise arising out of the mismanagement of Plaintiff's properties, land and other trust assets.  Defendant has continued, up to the present time, to fail to render any bonafide reconciliation and accounting despite being legally obligated to provide such under applicable federal law . . . ." Id. ¶¶ 33-35.

"The Defendant's continuing widespread and well-documented Indian trust fund mismanagement, and other breaches of trust have affected . . . the Plaintiff's trust assets and have caused . . . monetary losses to the Plaintiff." Id. ¶ 22.

"Defendant has failed to keep records of and/ or has failed to keep proper records regarding the Plaintiff's trust accounts and assets . . . . Defendant has never provided the Plaintiff with a full and meaningful accounting of its trust assets and trust funds.  Indeed before filing this action, the Plaintiff filed a complaint in the United States District Court for the District of Columbia demanding a full accounting of its trust accounts, trust assets and trust property." Id. ¶ 23.

"The Defendant has failed to obtain and continues to fail to obtain the maximum investment return possible . . . on the Plaintiff's trust funds.  This breach of fiduciary duty has caused and continues to cause monetary loss to the Plaintiff." Id. ¶ 24.

"Congress . . . [undertook] an investigation into Defendant's management and oversight over tribal trust accounts . . . . [and] has recognized the gross breaches of trust described herein." Id. ¶ 25.

Breaches of Trust

"Defendants have never rendered a full, accurate or timely audit or accounting to the Plaintiff of its trust assets, or provided the Plaintiff with a clear statement as to the origin or use of all of the funds in each of those accounts. . . . Defendants have kept and continue to keep the Plaintiff, who is the trust beneficiary, uninformed as to: (A) the trust property, trust funds and trust resources it owns or owned, (B) the income and interest that the Plaintiff's currently owned and previously owned trust property, resources and funds have produced, and (C) what disposition – if any – has been made of that income; and (D) whether the United States has properly managed the Plaintiff's trust assets." Id. ¶ 18.

"[M]ismanagement . . . has resulted in losses to the Plaintiff, a trust beneficiary. However, the extent of the losses is unknown to the Plaintiff at this time because the Defendants have:
     (A) failed to provide the Plaintiff with a full and complete accounting of the source of its trust funds,
     (B) failed to provide Plaintiff with accurate accounting of the amount contained in each of its accounts . . . ,
     (C) failed to provide the Plaintiff with a comprehensive statement of the use and investment of its trust funds . . . ,
     (D) failed to maintain accurate books and records of the Plaintiff's account,
     (E) lost and destroyed relevant trust account records,
     (F) failed or refused to disclose known losses, or unmade or incomplete payments to the Plaintiff . . . ,
     (G) failed or refused to reimburse trust beneficiaries for losses to their trust funds, and
     (H) failed to properly create certain trust accounts and deposit the appropriate monies in those accounts."  Id. ¶ 21.

"Defendants have continued to fail to implement the reforms required by law and have hampered the Special Trustee for American Indians in his efforts to perform his legal obligations." Id. ¶ 25.

"To date, the Defendants have failed to provide the Plaintiff with a full, accurate and timely accounting of

"Defendant has breached its fiduciary duty . . . through its conduct and omissions stated as follows:

A.  . . . by failing to obtain the highest available rates of interest and earnings on the Plaintiff's trust funds . . . .

B.  . . . by failing to deposit the Plaintiff's trust monies in interest bearing accounts in a timely manner.

C.  . . . by failing to properly invest the Plaintiff[']s trust monies in a timely manner.

D.  . . . by prematurely withdrawing the Plaintiff's trust funds from interest generating accounts.

E.  . . . by entering into or authorizing below market value contracts, leases, permits, rights-of-way and other similar arrangements dealing with Plaintiff's real property and natural resources.

F.  . . . by generally failing to obtain the highest and best price for the use and taking of Plaintiff's trust assets.

G.  . . . by failing to charge, or collect rents, royalties or other proceeds on leases, permits, rights-of-way . . . and/or by failing to collect and deposit those monies in interest bearing accounts in a timely manner.

H.  . . . by allowing third parties to use, remove, encumber, waste, damage, spoil and otherwise take possession of the Plaintiff's trust assets without consultation with the Plaintiff and/or without adequate compensation.

I.  . . . by allowing churches, schools, government agencies and other third parties to have the use and benefit of Plaintiff[']s trust properties without adequate compensation.

J.  . . . by allowing third parties to cause damage to the Plaintiff's trust properties and natural resources without paying compensation . . . .

K.  . . . by failing to enforce the reverter clause contained in various federal statutes and in various deeds and use agreements dealing with the Plaintiff's real property . . . .

L.  . . . .by failing to properly invest and manage the Plaintiff's judgment funds, Congressionally appropriated funds and other trust monies in a timely manner and in a manner which obtains the maximum investment return possible.

M.  . . . by failing to administer and manage the Plaintiff's trust lands, funds and property with the greatest skill and care required of a trustee.

N.  . . . by failing to exercise opportunities which would have maximized the productive use of the Plaintiff's land and resources and the income derived there from.

O.  . . . by failing to provide the consideration it

its trust funds and have failed to meet their other statutory and legal obligation to the Plaintiff leaving them in clear breach of their trust responsibility."  Id. ¶ 26.

"The Plaintiff is entitled to declaratory and mandatory injunctive relief compelling the Defendants to manage the Plaintiff's current and future trust funds and trust assets in full compliance with all applicable law and with their duties as the Plaintiff's guardian and trustee."  Id. ¶ 36

"The Tribe may have claims to damages that cannot be ascertained until after the Defendants make a reconciliation and accounting of the Tribe's trust property and accounts.  Some of these claims, should they exist, will have to be filed in the United States Court of Federal Claims."  Id. ¶ 38.

"WHEREFORE, the Plaintiff prays:
. . .
4.  For a judicial order preserving any claims that the Plaintiff might uncover once it receives that accounting.
5.  For an order directing the Defendants to manage all of the Plaintiff's current and future trust funds, properties and resources in full compliance with all applicable law and with their duties as the Plaintiff's guardian and trustee."  Id. at 13 ¶¶ 4-5 (Prayer for Relief).

| | |
|---|---|
| agreed to provide . . . in and pursuant to treaties, statutes, appropriations, contracts and other agreements involving the Plaintiff.<br><br>P.   . . . by conveying or allowing the conveyance of the Plaintiff's trust assets to third parties without adequate compensation and protections.<br><br>Q.   . . . by engaging in self-dealing and/or by converting the Plaintiff's trust assets to its own use without adequate compensation.<br><br>R.   . . . by failing to adhere to the requirements of 25 U.S.C. §162d.<br><br>S.   . . . by failing to pay the Plaintiff the interest or compound interest on certain liquidated amounts and judgments. . . .<br><br>T.   . . . by failing to charge, enforce and collect late penalties, breach of contract penalties, trespass damages and penalties, insurance payments, certain cost share and other payment obligations, condemnation awards, delinquent rent payments, damage claims and other similar damages and interest thereon.<br><br>U.   . . . by failing to require lessee, permittees and other[] users of trust assets owned by the Plaintiff to procure bonds, insurance or surety arrangements to protect the rights of the Plaintiff and to collect from those sureties damages owed to the Plaintiff." <u>Id.</u> ¶ 37. | |

The Supreme Court in <u>Tohono</u> did not provide a definition of "operative facts" for purposes of section 1500.  <u>See</u> <u>Central Pines Land Co. v. United States</u>, No. 98-314L, 2011 WL 3913099, at *7, *7 n.4 (citing Black's Law Dictionary 670 (9th ed.) (defining "operative fact" as "A fact that constitutes the transaction or event on which a claim or defense is based.")).  "However, courts have held that the facts alleged in two complaints need not be identical for section 1500 to apply; rather, the two complaints must stem from the same events."  <u>Id.</u> at *7 (citing <u>Griffin v. United States</u>, 590 F.3d 1291, 1294 (Fed. Cir. 2009) (finding that the same operative facts were present in two suits because the plaintiff's "injury for both claims stem[med] from the same single event"); <u>Trusted</u>

Integration, Inc. v. United States, 93 Fed. Cl. 94, 100-103 (2010)).  The Supreme Court

has also explained in Keene that a broad conception of the identity of facts is necessary to

give meaning to section 1500:

> The decision in British American Tobacco [Co. v. United States, 89 Ct. Cl.
> 438 (1939),] strikes us, moreover, as a sensible reading of the statute, for it
> honors Congress's decision to limit Court of Federal Claims jurisdiction not
> only as to claims "for . . . which" the plaintiff has sued in another court, but
> as to those "in respect to which" he has sued elsewhere as well.  While the
> latter language does not set the limits of claim identity with any precision, it
> does make it clear that Congress did not intend the statute to be rendered
> useless by a narrow concept of identity providing a correspondingly liberal
> opportunity to maintain two suits arising from the same factual foundation.

Keene, 508 U.S. at 213.  Thus, the fact that certain facts may be needed to meet elements

of proof of a legal theory articulated in one complaint but not the other does not prevent a

finding that two complaints constitute the same claim for purposes of section 1500.

Trusted Integration, 93 Fed. Cl. at 102.  As the Federal Circuit has explained:

> [E]lements of proof are only relevant once a legal theory has been chosen.
> As previously discussed, the term "claim" in section 1500 "has no reference
> to the legal theory upon which a claimant seeks to enforce his demand . . .
> ."  Since the legal theory is not relevant, neither are the elements of proof
> necessary to present a prima facie case under that theory.

Johns-Manville Corp. v. United States, 855 F.2d 1556, 1564 (Fed. Cir. 1988) (internal

citation omitted).

This court has also previously held in Ak-Chin Indian Community v. United

States, 80 Fed. Cl. 305 (2008) that attempts to distinguish the government's trust duties in

each complaint are unavailing, where "the operative facts, those facts upon which

plaintiff's allegations of breaches of the government's trust responsibility are based, are

the same in both the Court of Federal Claims complaint and the District Court

complaint." Id. at 319.  The court explained the substantial overlap in operative facts in

Ak-Chin as follows:

> In each action, the courts must consider the government's management and administration of plaintiff's trust.  The court will be required to review the government's alleged failure to maintain records and account for plaintiff's trust property by considering any existing records related to the government's collection, handling, and investment of the Community's trust funds and property.  The nature of Indian trust cases and the government's trust responsibility owed to Indian tribes does not lend itself to a simple delineation or separation of operative facts as they pertain to the government's various duties owed to Indian tribes.  It is not apparent to the court how it could address facts related to the government's duty to invest and deposit plaintiff's trust funds without considering the facts related to the government's overall trust obligations owed to plaintiff, including its duty to account.  It is simply not the case that there are two different and separate sets of trust duties described in plaintiff's District Court complaint and its Court of Federal Claims complaint.  Therefore, the court finds that plaintiff's Court of Federal Claims complaint and District Court complaint contain the same operative facts for purposes of the § 1500 jurisdictional bar.

Id. at 319-20 (emphasis added).  Again, in Red Cliff Band of Lake Superior Chippewa

Indians v. United States, No. 06-923L, slip op. (Fed. Cl. Sept. 19, 2011), the court

rejected these same arguments and dismissed the plaintiff's later-filed claim in this court

pursuant to section 1500 as follows:

> The issue that plaintiff seeks to litigate here is the government's alleged failure to have managed trust assets in the manner required of a competent trustee.  This case, in other words, focuses on what the government, as trustee, should have done.  But that contention cannot be successfully established without at the same time demonstrating what the government actually did (or failed to do).  Of necessity then, plaintiff's proof in this court must revisit the same facts that make up the substance of its district court case.  Indeed, this very point is explicitly recognized in plaintiff's

> district court complaint where it states as follows: "The Tribe may have
> claims to damages that cannot be ascertained until after the Defendants
> make a reconciliation and accounting of the Tribe's trust property and
> accounts.  Some of these claims, should they exist, will have to be filed in
> the United States Court of Federal Claims."[5]   The necessity for an
> accounting as a prelude to a suit for damages in this court that is recognized
> in the quoted text means, in simple terms, that a case here is dependent
> upon what the accounting data shows [or does not show].  And given this
> acknowledged evidentiary overlap, it is simply not correct to assert that the
> two actions . . . turn on different operative facts.

Id. at 2-3.

Tested by these standards, it is clear that the plaintiff's district court complaint and

the complaint in this court constitute the same claim for purposes of section 1500.  As in

Tohono, the operative facts alleged in the two complaints substantially overlap and in

certain instances are nearly identical.  See Tohono, 131 S.Ct. at 1731 ("Two suits are for

or in respect to the same claim, precluding jurisdiction in the CFC, if they are based on

substantially the same operative facts, regardless of the relief sought in each suit."); see

also Yankton Sioux Tribe v. United States, No. 2009-5027, 2011 WL 3873846, at *1

(Fed. Cir. Sept. 2, 2011) ("[T]he Court of Federal Claims lacks jurisdiction if a suit based

on substantially the same operative facts is pending in a district court regardless of

whether the complaints seek overlapping relief."), aff'g Yankton Sioux Tribe v. United

States, 84 Fed. Cl. 225 (2008).

Both complaints allege that the government failed to act as a prudent investor and

otherwise mismanaged the plaintiff's trust funds and property.  Both complaints allege

---

[5] Omaha Tribe has also made this statement in its district court complaint.  See Am. District
Compl. at ¶ 38.

the government breached its duties to account, keep adequate records, refrain from self-dealing, preserve trust assets, and invest prudently to maximize returns.  Both complaints allege these breaches as to the same trust corpus, including tribal lands, natural resources, grazing rights, mineral rights, rights in property, and trust funds.  In analyzing these allegations, this court and the district court will have to consider the government's management and administration of the plaintiff's trust corpus, including reviewing the existing records related to the government's alleged failures in properly collecting, handling, and investing the plaintiff's trust funds and property in both cases.  Moreover, despite its contentions that the district court action will be dominated by accounting issues, the plaintiff also seeks in that action declaratory and mandatory injunctive relief compelling the government to manage the plaintiff's current and future trust funds and trust assets in "full compliance with all applicable law and with their duties as the plaintiff's guardian and trustee."  Am. District Compl. at ¶ 36.  As with previous actions before the court, here it is "not apparent to the court how it could address facts related to the government's duty to invest and deposit plaintiff's trust funds without considering the facts related to the government's overall trust obligations owed to plaintiff, including its duty to account."  Red Cliff Band of Lake Superior Chippewa Indians, No. 06-923L, slip op. at 3 (quoting Ak-Chin Indian Community, 80 Fed. Cl. at 319).

For these reasons, the court finds that the district court suit and CFC suit are indeed "for or in respect to" the same claim because of the substantial overlap of operative facts.  See 28 U.S.C. § 1500; Tohono, 131 S.Ct. at 1731.  Thus, section 1500

precludes this court from exercising jurisdiction over the plaintiff's CFC complaint because, at the time the complaint was filed, the same claim was pending in the District Court for the District of Columbia.

## III.    CONCLUSION

For the above-stated reasons, the court must **DISMISS** the Omaha Tribe of Nebraska's complaint for lack of subject-matter jurisdiction pursuant to 28 U.S.C. § 1500.  The Clerk is directed to enter judgment accordingly.  Each party to bear its own costs.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge